## The Curran Foundation Charter.

*G. W. Pepper*, for petitioner; *O. J. Roberts*, contra.

SMITH, J., Dec. 10, 1928.—On March 6, 1928, a petition was presented to this court for a certificate of incorporation for a corporation of the first class, to be known as The Curran Foundation. A copy of the proposed charter was duly filed in the office of the Prothonotary of the Courts of Common Pleas of this county and proper advertising was done by the petitioners as provided by law. On March 13, 1928, Ira Jewell Williams, Esquire, was appointed master to consider and report upon the application for a charter for the proposed corporation. On April 13th, a remonstrance was filed to the granting of the certificate of incorporation. The argument on the remonstrance developed a number of facts. (a) The purpose of the proposed corporation as stated in the application:

"2. The purpose of this corporation shall be the promotion of the cause of the higher Christian education of women, in conformity with the principles declared in the will of William Curran, deceased, probated before the Register of Wills at Philadelphia and recorded in Will Book 120, page 399."

This purpose was somewhat amplified by articles VII and VIII of the tentatively-proposed by-laws of the corporation, which by-laws have been approved by all of the incorporators. Said articles read as follows:

"ARTICLE VII—*Application of Funds.*

"The available funds of the corporation, after the deduction of operating expenses, may be applied as follows:

"(1) To the creation of Curran Scholarships for (or to the payment of tuition fees of) selected students in such institution or institutions of learning in Philadelphia and vicinity or other place, permitted by the will as the Board of Trustees may from time to time approve, the selection of students to be made by the Board of Trustees and the test of the approval of the institution to be a reasonable conformity to the principles announced in William Curran's Will.

"(2) To the payment of all or part of the salary in any such institution or institutions of one or more professors giving instruction in Greek or Latin or Hebrew, each professor whose salary is thus paid or supplemented to be styled a Wiltberger Professorship of the language or languages in question.

"ARTICLE VIII—*Selection of Students.*

"1. In selecting students under the Curran Will the Board of Trustees shall, among applicants, adopt the following order of preference:

"(1) Daughters of Foreign Missionaries.

"(2) Daughters of Ministers of the Gospel at home.

"(3) Daughters of Members of the learned professions.

"(4) Young women, irrespective of parentage, who give evidence of the qualifications contemplated by the testator.

"11. Students or beneficiaries seeking aid from funds other than those received from the Curran Will shall be selected in such manner as the Board of Trustees shall from time to time determine."

There were many objections filed to the proposed charter. The principal objection is, "that the will of William Curran contemplated a college, and, hence, the application for a 'Foundation' is not in accord with the will." Another objection to the proposed charter is that the "purpose" paragraph is inadequate under the law. What does the paragraph mean when it states that the purpose shall be the promotion of the cause of higher Christian education of women in conformity with the principles declared in the will of William Curran, deceased? To ascertain what the principles as declared are recourse must be had to the will. A reading of this complex instrument, consisting of a will and four codicils, indicates that the testator had a definite purpose, to wit, leaving a monument to himself in giving a Christian education to women, but his intent as to the means to be used in carrying out that purpose is not as certain.

In re Curran's Appeal, 4 Pennypacker 331 (1884), the court held that the trust was valid.

The first question to be decided is, which did the testator intend to leave as a monument to himself, (1) a particular college or (2) a method of preparing young women for a higher Christian training? Paragraph four of the will states:

"4. Whereas I have for many years been impressed with the importance and need of good and efficient female teachers for common schools and higher seminaries of learning in our country, and specially of such as have been educated in the Sacred Scriptures, and as I am particularly desirous to aid and assist such females as may, from inclination and mental capacity, be prepared as proper and competent teachers of such schools and higher seminaries of learning."

In paragraph five of this will he states:

"The General Assembly shall have power to fix the location of said school, and to change the same; the said Assembly shall choose a Board of Directors for said school; and such board, and successors, shall be selected from different branches of the Christian church, and not less than one-half of said board shall be laymen. This board shall make its own by-laws, as also rules and regulations, for the government of said seminary; it shall elect, upon their ascertained merits, the teachers, all of whom shall be females, and fix their compensations, pay the same quarterly, by warrants drawn at a stated meeting on said trustee. The board shall hold stated meetings for transacting the business of said school, shall keep minutes of their proceedings and shall render to said General Assembly an annual report of the condition, the number of pupils and the number of teachers, and the expenditures of said seminary."

In codicil one of the will the testator revoked that portion of his will wherein he named a normal school as his beneficiary and instead stated:

"And I hereby declare it to be my will to create my estate a foundation, the annual income of which shall be used to promote the higher education of females, in an institution adapted to that purpose, which shall be located in the City of Philadelphia or adjacent to it.

"Should this projected female college not go into operation until after my decease, I nominate and appoint Rev. Tryon Edwards, D. D., Rev. George W.

Musgrave, D. D., Charles P. Turner, M. D., Alexander Whildon and Thomas Potter, Esqs., now of the Board of Directors of said 'Philadelphia Female College,' to execute my will so far as relates to the expenditure of the income which I have devoted to the education of young women. These five directors shall fill vacancies in their number, but only from the Board of Directors of said College, to promote harmony of action. They shall keep minutes of their proceedings, and report annually to my said trustee of the use which they make of the fund appropriated for female education. . . .

"It is my will that these five directors shall elect a competent female, who shall be professor of the Latin, Greek and Hebrew languages and literature. I would use the bible as a sun around which the education of the beneficiaries of this foundation shall revolve. I esteem female piety as a necessity to the highest progress of society. It is my desire that these graduates should be qualified as teachers, and that everyone of them should be able to read the sacred scriptures in the original languages. In matters non-essential to my great purpose, I permit a wide and sound discretion. I would combine the highest culture which our beautiful city can afford with consecration to the cause of Christ, so that the beneficiaries of this foundation may be 'as corner stones, polished after the similitude of a palace,' 'sanctified and meet for the Master's use.' It is my will that the entire income of the foundation, as appropriated by my trustee, shall be expended exclusively upon females, either as professors in the institution or beneficiaries on the foundation."

In codicil two of the will the testator stated:

"I declare it to be my will that the Professorship of the Latin, Greek and Hebrew languages in the college for the education of females, to the endowment of which I have willed a support, shall be named the Wiltberger Professorship, in honor of my dear wife, whose maiden name was Elizabeth W. Wiltberger; and I recommend that a gradual increase of salary be made for long and faithful service.

"It is my will that, should this projected Female College not go into successful operation before my decease, or within five years thereafter, that my trustee shall invest the income of my estate discreetly, and accumulate a capital yielding an annual income of thirty thousand dollars before any appropriation be made for the college."

In codicil three of the will the testator canceled that part of his will providing for the appointment of five directors of the Philadelphia Female College and instead provided that the duty to supervise the expenditure of the income of the foundation devolve upon the board of directors of the new organization which must be created. He stated:

"As in the early years of my religious life I deeply pondered the question of my duty to go as a missionary, I desire that what I do for this college shall remain as a monument of my ardent love for the cause of missions. I desire that the influence of this college should be to train up females who shall provide for themselves and bless the church of Christ. . . ."

The testator further stated:

"When and as soon as the aforesaid annual income of thirty thousand dollars is completed, I desire my trustee to accumulate a further sum of five thousand ($5000) dollars, the annual interest of which shall be paid to Dr. William C. Cattell, President of Lafayette College, at Easton, Pa., or his successors in office, the income of which sum shall be paid to competent and distinguished lecturers, to deliver not less than six lectures annually before the students of said college, on the principles of the Reformation, &c., &c. I hope these lectures may be esteemed worthy of publication. When the

annual income of my estate reaches the sum of thirty thousand dollars, my trustee shall select twelve persons from the eldership of the Presbyterian churches in the Synod of Philadelphia in connection with the General Assembly, who shall apply for such legislation as will give the college legal existence."

From a reading of the will and codicils of William Curran, it may be logically deduced that it was not an educational structure that he planned to erect, but a method of establishing a type or form of education according to standards expressed by him.

His statement of having the legislature grant a charter to a foundation does not raise any obstacle. The will was written prior to 1874, and he evidently had no knowledge that a corporate charter of the first class was granted by the courts.

To meet the intent of the testator, the formation of a foundation more nearly fills the need. This foundation would be in a position, subject to the approval of the Orphans' Court of this county, of selecting institutions in or about the City of Philadelphia, or chairs in institutions teaching the subjects nominated by the testator. It could also better select young women entitled to such benefits. This foundation named in honor of the testator would be the monument that he desired to establish. The contribution of moneys to one or more institutions appearing here as objectors would not serve that definite purpose. The purpose is clear and specific all through the will and codicils. The foundation is a logical method of carrying into effect that purpose by creating professorships and scholarships and fixing the character of instruction.

The Synod of Pennsylvania was requested by the testator in the third codicil "to have an oversight of the progress of this endowment." This does not give them the right to choose the members of the foundation. The reading of the will shows that the privilege given the Synod of Pennsylvania is in direct contrast to the expressed powers conferred upon the directors as contemplated by the testator to carry out his plan.

The twelve elders selected by the trustee have applied for this charter. The charter is complete in form. There was no need of making the will of William Curran a part of the proposed charter. Proper reference was made to its place of record: Vaux's Appeal, 109 Pa. 491 (1885); In re Garrett Williamson Lodge, 239 Pa. 474 (1913).

·The general intent of the testator is clear. It is the right of the Orphans' Court to interpret the true meaning of the will and codicils in deciding how the income shall be administered. The awards by the Foundation will also be first approved by the Orphans' Court.

The Foundation is best able to select the true objects of the testator's beneficence.

The disposition of the requests for findings of fact and conclusions of law as submitted by Ira Jewell Williams, the master, is as follows:

### Findings of fact.

1. That at least three of the incorporators are citizens and residents of this Commonwealth. Affirmed.

2. That the name of the intended corporation is "The Curran Foundation." Affirmed.

3. That the location of the intended corporation and place of business is to be in Philadelphia. Affirmed.

4. That the intended corporation is to have perpetual succession by its corporate name. Affirmed.

5. That the names and addresses of the subscribers are given. Affirmed.

6. That there is to be no capital stock. Affirmed.

7. That the funds necessary for the maintenance of the intended corporation will be derived from the income of the estate of William Curran, deceased, and from other sources when applicable to the general purposes of the said intended corporation. Affirmed.

8. That the number of directors and names and addresses of those chosen for the first year are given. Affirmed.

9. That the purpose of the intended corporation falls within the requirements of the Act of April 29, 1874, P. L. 73, and its supplements, and is in harmony with the intent as disclosed by the will and codicils of William Curran, deceased. Affirmed.

10. That the number of subscribers is twelve and they are all of full age. Affirmed.

11. That all of the subscribers are citizens of this Commonwealth. Affirmed.

12. That there are no similar-named corporations in this county or State. Affirmed.

13. That the object of the intended corporation is lawful. Affirmed.

14. That the intended corporation is not likely to be injurious to the community. Affirmed.

### Conclusions of law.

1. The application is in proper form. Affirmed.

2. The name of the corporation is a proper one. Affirmed.

3. The charter applied for is within the purview of the Act of April 29, 1874, P. L. 73, and its supplements. Affirmed.

4. The intended corporation has a lawful object and is not likely to be injurious to the community. Affirmed.

The recommendation of the master that the charter of "The Curran Foundation" as submitted by him be approved is granted and decree entered, and exceptions are hereby dismissed.